IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


COURTNEY A.,[1]

  Plaintiff,

  v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

  Defendant.

No. 3:24-cv-01939-HZ

OPINION & ORDER


D. James Tree
Tree Law Offices
3711 Englewood Avenue
Yakima, WA 98902

  Attorney for Plaintiff

Suzanne Luse
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.


1 – OPINION & ORDER

Ryan Lu
Special Assistant United States Attorney
Office of Program Litigation, Office 7
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

      Attorneys for Defendant

HERNÁNDEZ, Senior District Judge:

Plaintiff Courtney A. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court remands this case for immediate payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on March 14, 2022, alleging an onset date of March 21, 2022. Tr. 106-07.[2] Plaintiff's date last insured ("DLI") is December 31, 2026. Tr. 107. Their application was denied initially and on reconsideration. Tr. 141-50, 155-62.

On April 16, 2024, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 34. On April 26, 2024, the ALJ found Plaintiff not disabled. Tr. 27. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on migraines, generalized anxiety disorder, depression, premenstrual dysphoric disorder (PMDD), a BMI of 40-44.9, general inflammation, a back injury caused by a car accident in 2017, possible attention deficit/hyperactivity disorder

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 10.

(ADHD), possible endometriosis, and insomnia. Tr. 315. At the time of their alleged onset date, they were 31 years old. Tr. 25. They have at least a high school education and past relevant work experience as a sales clerk, a call center representative, a telephone clerks supervisor, and an information specialist. Tr. 25.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after their alleged onset date. Tr. 17. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "migraines, fibromyalgia, polyarthralgia, obesity, a depressive disorder, an anxiety disorder, and posttraumatic stress disorder (PTSD)." Tr. 17. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 17. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with the following limitations:

> [S]he can never climb ladders, ropes, or scaffolds. She can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl. She can tolerate indoor ambient lighting and moderate noise level intensity. She can tolerate occasional exposure to extreme cold, extreme heat, and vibration. She can tolerate no exposure to hazards such as unprotected heights and moving mechanical machinery. She can understand, remember, and carry out simple tasks that can be learned in 30 days or less. She can tolerate occasional changes in a routine work setting. She can tolerate occasional interaction with the general public.[3]

---

[3] Throughout their briefing, Plaintiff uses they/them pronouns. The ALJ, however, refers to

4 – OPINION & ORDER

Tr. 19. Because of these limitations, the ALJ concluded that Plaintiff could not perform their past relevant work. Tr. 25. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "laundry laborer," "cleaner," "housekeeper," and "patching machine operator." Tr. 26. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 27.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

///

///

---

Plaintiff with she/her pronouns. The Court therefore uses the singular they throughout this opinion to refer to Plaintiff except when quoting the ALJ's decision.

## DISCUSSION

Plaintiff argues that the ALJ erred in discounting Plaintiff's subjective symptom testimony as to their migraines. Pl.'s Br. 1., ECF 11. This Court agrees. Because the ALJ would be required to find Plaintiff disabled if their testimony was credited as true, the Court remands this case for immediate payment of benefits.[4]

## I.      Subjective Symptom Testimony

Plaintiff first argues that the ALJ erred in his treatment of their subjective symptom testimony. Pl.'s Br. 2. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded on other grounds* by 20 C.F.R. § 404.1502(a). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id*. (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) *superseded on other grounds as recognized by Arnott v. O'Malley*, No. 23-15814, 2024 WL 2237720 (9th Cir. May 17, 2024)). "An ALJ does not provide specific, clear, and

---

[4] Plaintiff also argues that the ALJ erred in discounting their testimony as to their other conditions, improperly assessing the medical opinion evidence, improperly considering the lay witness testimony, and improperly evaluating Plaintiff's migraines under Listing 11.02. Pl.'s Br. 1. The Court, however, need not address these arguments as remand for benefits is appropriate in this case.

6 – OPINION & ORDER

convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin,* 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony*." Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (holding the reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony").

Plaintiff last worked in March of 2022. Tr. 76. They stopped working when they ran out of protected leave under the Family and Medical Leave Act ("FMLA"), which they used when experiencing migraines. Tr. 49; *see* Tr. 590, 536, 538 (medical providers noting that they completed FMLA paperwork for Plaintiff). Plaintiff experienced intense migraines that made it difficult to work at a computer and concentrate. Tr. 49. They were bedbound at that time. Tr. 49. Plaintiff's migraines usually started before work and caused them to call out sick. Tr. 49. But sometimes their migraines would start during the workday, and they would have to leave early. Tr. 49. By the end of their most recent job, Plaintiff had to leave early or call in sick a couple times a week. Tr. 49; *see also* Tr. 536 (November 2021 chart note indicating that Plaintiff was requesting updated FMLA paperwork because they were having more frequent migraines and staying out of work for longer periods of time).

Plaintiff's current medications have helped control their migraines "a little bit." Tr. 50. A few times a month, Plaintiff is still bedbound. Tr. 50. And their migraines can last two to four days. Tr. 51. But they are not as severe as they used to be. When they take sumatriptan to abort a migraine, the pain is reduced. Tr. 50. They still have other symptoms, like noise and light sensitivity and pressure that can last 24 to 72 hours. Tr. 50.

7 – OPINION & ORDER

At the time of the hearing, Plaintiff lived with their wife and brother-in-law. Tr. 53. Plaintiff's wife does most of the day-to-day chores. Tr. 53. Plaintiff feeds their cats once per day. Tr. 342. They occasionally need reminders to take care of personal needs, and their cognitive function is affected by migraines. Tr. 343, 346. Because their medications cause drowsiness and brain fog, they often nap in the middle of the day. Tr. 54. On a good day, they can engage in their hobbies—which include crocheting and video games—for one or two hours. Tr. 56-57. Plaintiff spends time talking and watching television or movies a few times a week, and they go to a friend's house once per month. Tr. 345.

The ALJ gave three reasons for discounting Plaintiff's subjective symptom testimony. First, the ALJ found that the record indicated that Plaintiff's migraines have improved with treatment. Second, the ALJ found that Plaintiff could engage in activities of daily living. Third, the ALJ noted a lack of support from the objective medical evidence, highlighting specifically that Plaintiff's records show that they are "alert and oriented" at appointments. The Court addresses each in turn.

A.    Improvement with Treatment

In evaluating a claimant's testimony, the ALJ may rely on evidence of effective treatment. *See Orteza*, 50 F.3d at 750 ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication."); *Tommasetti*, 533 F.3d at 1040 (finding claimant's testimony undermined by the fact he responded well to conservative treatment). But where "[c]ycles of improvement and debilitating symptoms are a common occurrence," an ALJ errs by "pick[ing] out a few isolated instances of improvement over a period of months or years and . . . treat[ing] them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir.

8 – OPINION & ORDER

2014). That a claimant "makes some improvement does not mean that the person's impairments no longer seriously affect [their] ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

The ALJ found that Plaintiff's testimony that their medications have only been partially helpful is inconsistent with the improvement in treatment Plaintiff experienced with their current migraine medications. Tr. 20, 21. Specifically, the ALJ found that Plaintiff's medication regime was "effective at managing their headaches." Tr. 21. He highlighted records from Plaintiff's neurologist that indicated Plaintiff had periods of relief and a reduction in the frequency of their migraines. Tr. 22.

The ALJ's findings are not clear, convincing, or supported by substantial evidence in the record. While Plaintiff's migraines may have improved from fifteen migraine days per month to one or two migraines per month with treatment, *see* Tr. 608, 727, the medications were not curative in managing Plaintiff's migraines. Indeed, the record also shows that Plaintiff consistently reported having at least one to two migraines per month to both their medical providers and in their headache and pain journals. Tr. 389-441 (pain journals from the fall of 2022 through spring of 2023 showing one to four migraines per month, most of which are multi-day migraines); 727 (reporting one to two headaches per month despite medication), 718 (noting increase in migraines to four to eight per month spanning 15 days due to loud construction noise), 838 (reporting two migraines in last couple months to psych provider), 700 (pain and headache journal showing migraines two migraines per month after treatment started lasting between 10 and 46 hours). Indeed, the ALJ acknowledges that Plaintiff still had one or two migraines per month despite treatment. Tr. 20. This record above is consistent with—not

9 – OPINION & ORDER

contradictory to—Plaintiff's testimony that their medications have been only partially effective in reducing their migraines in severity and frequency. Tr. 50-51.

Moreover, the reduction in the number of migraines does not conflict with Plaintiff's testimony that their migraines often lasted days at a time or that they could become bedbound by migraines when they did occur. Tr. 50-51. Plaintiff also testified that even when their migraine pain was reduced, Plaintiff would still experience pressure in their head, noise sensitivity, and light sensitivity. Tr. 51. In other words, the ALJ erred in discounting Plaintiff's testimony because their migraines reduced in frequency when the record and their testimony shows that—despite improvement with treatment—Plaintiff's migraines still seriously affected their ability to work. *See Murphy v. Colvin*, 759 F.3d 811 819 (9th Cir. 2014) ("Although the ALJ stated the medical notes showed [the plaintiff's] health consistently improved the twelve months after her stroke, there is no evidence to suggest that she had improved to the point where she could perform light work.").

B.      Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise does not in any way detract from [their] credibility," *Webb v. Banhart,* 433 F.3d 683,

10 – OPINION & ORDER

688 (9th Cir. 2005) (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ found that Plaintiff's testimony was inconsistent with their activities of daily living, emphasizing that Plaintiff can "drive, use public transportation and rideshare apps, shop in stores, and independently manage medication and finances." Tr. 20.

The ALJ's reasoning is neither clear nor convincing. Plaintiff's testimony that they have migraine headaches is not reasonably inconsistent with their ability to drive or use transit and rideshare apps. Moreover, the ALJ has left out key information about Plaintiff's ability to carry out their activities, including driving, shopping in stores, and managing medication and finances. For example, Plaintiff testified that they only drove when they "absolutely had to" because their hip pain would flare up. Tr. 54. And Plaintiff described in their function report that they need occasional reminders from their spouse to take care of personal needs, and that they can manage money but need their spouse to "double check things" for them. Tr. 343-44. Plaintiff also explained that they forget easily and their cognitive functions can be affected by migraines. Tr. 55, 346. Accordingly, the ALJ erred in rejecting Plaintiff's testimony because of their activities of daily living.

C.    Lack of Support from the Objective Medical Evidence

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of

11 – OPINION & ORDER

your symptoms . . . ."). Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding where the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). And under certain circumstances, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r,* 359 F.3d 1190, 1196 (9th Cir. 2007) ("'Graphic and expansive'" pain symptoms could not be explained on objective, physical basis by claimant's treating physician); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding the ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain). However, this may not be the ALJ's sole reason for discounting a claimant's testimony: "[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722; *see also* 20 CFR §§ 404.1529(c)(2), 416.929(c)(2).

At a few places in his decision, the ALJ found that Plaintiff's testimony was not supported by the objective medical evidence. With regard to Plaintiff's testimony that they were—at times—bedbound from their migraines, the ALJ emphasized that Plaintiff's neurologist did not document any complaints of being bedbound. Tr. 20. As to Plaintiff's testimony that they have "brain fog" and drowsiness, the ALJ noted that Plaintiff was alert and oriented during medical appointments. Tr. 20, 22.

As a preliminary matter, this cannot be the only reason for discounting the Plaintiff's testimony. *See Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) ("[A]n ALJ may not disregard a claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence." (cleaned up)). As this is the sole remaining reason for discounting Plaintiff's

12 – OPINION & ORDER

testimony as to their migraines, this is not a clear or convincing reason to reject Plaintiff's testimony.

To the extent that the ALJ is suggesting that Plaintiff's complaints of drowsiness and brain fog—which Plaintiff describes as being "slow to respond," Tr. 55—are inconsistent with exams showing that Plaintiff was "alert and oriented" during appointments, the ALJ has also erred. Mental status exams are "used to evaluate the patient's level of consciousness and the content of the consciousness." George Newman, M.D., Ph.D., *How to Assess Mental Status*, Merck Manual: Professional Edition (Aug. 2025), https://perma.cc/EY2J-EVBS. Specifically, the mental status exam asks whether a patient is "alert" or "actively perceiving the world around them and able to anticipate the examiners and their own next actions." *Id.* The exam also asks whether there are any suggestions of cognitive decline. *Id.* A normal mental status exam—i.e. the patient is not unconscious and there is no indication of cognitive decline—is not inconsistent with Plaintiff's migraines. The ALJ, therefore, erred in discounting Plaintiff's subjective symptom testimony because of Plaintiff's normal mental status exams.

## II.    Remand for Benefits

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) (finding the "credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is

13 – OPINION & ORDER

credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.* The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101 (finding that when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule").

Remand for payment of benefits is appropriate in this case. As noted above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony. *See supra* Part I. Second, the record is fully developed, and further administrative proceedings would serve no useful purpose. As described above, Plaintiff's testimony as to the present effects of their migraines on their ability to work and activities of daily living is consistent with the medical record. *Id.* Finally, when Plaintiff's testimony is credited as true, the ALJ would be required to find Plaintiff disabled. Plaintiff testified and the record shows that they experienced at least one to two multi-day migraines per month. *See supra* Part I.A. The ALJ acknowledged as much in his decision, finding that Plaintiff reported having one to two migraines a month to their provider. As the VE testified at the hearing, an individual who missed two workdays per month would not be employable. Tr. 45. The Court therefore remands this case for benefits.

### CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED:_____May 13, 2026_____.

_____
MARCO A. HERNÁNDEZ
United States Senior District Judge